Matter of Anson v Zucker (2018 NY Slip Op 04063)





Matter of Anson v Zucker


2018 NY Slip Op 04063


Decided on June 7, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

525690

[*1]In the Matter of LISA ANSON, as Parent and Guardian of an Infant, Petitioner,
v
HOWARD A. ZUCKER, as Commissioner of Health, et al., Respondents, et al., Respondents.

Calendar Date: April 30, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


Bottar Leone, PLLC, Syracuse (Samantha C. Riggi of counsel), for petitioner.
Barbara D. Underwood, Attorney General, Albany (Jonathan D. Hitsous of counsel), for Howard A. Zucker and others, respondents.


Lynch, J.

MEMORANDUM AND JUDGMENT
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Health denying petitioner's request for approval of a pool lift.
In 2011, the Legislature created the New York State Medical Indemnity Fund (hereinafter the Fund) "to provide a funding
source for future health care costs associated with birth related neurological injuries, in order to reduce premium costs for medical malpractice insurance coverage" (Public Health Law § 2999-g). Petitioner is the mother of a child (born in 2005) who was enrolled in the Fund in November 2012, having settled a medical malpractice lawsuit for neurological injuries sustained at birth. In April 2015, petitioner applied to the Fund for pre-approval to purchase and install a "motorized wheelchair to water pool lift" and accessories for her child (see 10 NYCRR 69-10.6 [a]). The family home featured an above-ground pool and hot tub adjacent to a wooden deck attached to the back of the house. The child utilizes the pool and hot tub for therapeutic purposes, and the pool lift was requested to provide a safe means for him to access the water. The application [*2]included a detailed cost estimate of $12,062.
The Fund is required to pay "qualifying health care costs," which include "environmental home modifications (Emods)" and "assistive technology" (10 NYCRR 69-10.1 [z]). The application was initially treated as an Emod, which "means an interior or exterior physical adaptation to the residence . . . that is necessary to ensure the health, welfare and safety of the enrollee, enables him or her to function with greater independence in the community and/or helps avoid institutionalization, and has been ordered by a physician" (10 NYCRR 69-10.1 [m]). The application included a letter from the child's physician, Stephen Eadline, explaining that the device was medically necessary for continued home care. At the direction of the Fund's third-party administrator, petitioner resubmitted the request as one for "assistive technology" (hereinafter AT), which "means those devices . . . [or] pieces of equipment . . . determined necessary by a physician for purposes of the enrollee's habitation, ability to function or safety in his or her current . . . residence" (10 NYCRR 69-10.1 [b]). That request was supported by an additional letter from Eadline. The regulation clarifies that where an item can be defined as both an Emod and AT, it will be considered an Emod (see 10 NYCRR 69-10.1 [b]).
At the Fund's direction, a home evaluation was performed and a report, provided in August 2015, recommended approval of the pool lift request and that petitioner obtain additional price quotes for the equipment. The evaluator offered to assist in finding local distributors or links to the recommended products. Despite its earlier guidance, the Fund denied the application, reasoning that the pool lift did not constitute an Emod because it did not result in "physical adaptation[s] to the residence." The Fund added, without elaboration, that the pool lift did "not otherwise constitute qualifying health care costs." Upon petitioner's administrative appeal, which by consent was limited to a document-based review (see 10 NYCRR 69-10.16 [b]), an Administrative Law Judge recommended affirming the Fund's denial of the application as either an Emod or AT. Respondent Commissioner of Health adopted the Administrative Law Judge's recommendation and denied the application. Petitioner commenced this CPLR article 78 proceeding to challenge the Commissioner's determination, which Supreme Court transferred to this Court pursuant to CPLR 7804 (g).[FN1]
The standard of review is whether the Commissioner's determination was arbitrary and capricious (see CPLR 7803 [4]; Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs. , 77 NY2d 753, 757-758 [1991]). With respect to the AT determination, the Fund acknowledged that the pool lift request was medically necessary (see 10 NYCRR 69-10.10 [e] [1]). The Commissioner also determined that the pool lift falls within the definition of AT. That said, the Commissioner concluded that the application was incomplete because petitioner did not submit "any assessments particularly required" under 10 NYCRR 69-10.10 (e) (2)[FN2]. Our review [*3]of the record shows otherwise. Medical necessity has been conceded, and it is manifest in view of the child's significant functional limitations that a pool lift would be beneficial in promoting his ability to engage in water therapy at home. Petitioner has explained, without contradiction, that the child is now too tall and heavy for her to manually lift him into the pool. She acknowledged that they could utilize a pool at a physical therapy center approximately a 20-minute drive from their home, but the logistics of doing so were quite difficult and that facility was only open to the public one day a week. She also noted that the pool lift there did not have a three-point harness needed to safely secure the child and required two adults to participate in transferring the child into and out of the pool.
Significantly, the Commissioner's determination overlooks the home evaluation report that makes several significant assessments as to the need for and viability of the pool lift. That report explains that carrying the child into the pool or hot tub was no longer safe for either the child or the caregiver. The child is nonambulatory and "requires support accessories
. . . to position him while seated, secondary to poor trunk and head control." For this reason, the report explains that "a simple chair type lift with a seatbelt" would not suffice. Instead, the child needs "a supportive sling to give him adequate trunk and head support." The report rejected the use of a Hoyer lift as hazardous and explained that the lift needed to be secured to the deck. The proposed pool lift would attach to separate sockets secured on the deck adjacent to the pool and the hot tub, allowing petitioner to utilize the lift at both locations. It would also allow petitioner, who was often alone at home with the child, to perform the transfer without the assistance of another adult. Cumulatively, we find this evidence adequately addresses the assessment criteria set forth in 10 NYCRR 69-10.10 (e) (2). We are mindful that the Commissioner also observed that an applicant is generally required to get three bids when, as here, the item will cost more than $2,500, but the regulation expressly provides that bids are required after the item has been approved — not as a condition of approval (see 10 NYCRR 69-10.10 [f]). Based on this record, we conclude that the Commissioner's denial of petitioner's application as incomplete was arbitrary and capricious.
As to the Emod, the Commissioner determined that the pool lift did not qualify, reasoning that "[a] pool is not deemed an exterior modification of a residence because it is typically outside the confines of the [home]." This reasoning mischaracterizes the proposal. By definition, Emods include exterior physical adaptations to a residence, including ramps. As demonstrated in the home evaluation, the backyard deck is attached to and directly accessed from [*4]the house through two back doors [FN3]. We readily recognize the attached deck as part of the residence, and the proposed modification here is to install two deck sockets that extend below the deck, i.e., the physical modification would be to the deck, not the pool. The pool lift is not directly attached to either the deck or the pool, but positioned in either socket depending on the intended use of either the pool or hot tub. As such, we find that the pool lift qualifies as an Emod and that the Commissioner's contrary finding was arbitrary and capricious.
McCarthy, P.J., Devine, Clark and Pritzker, JJ., concur.
ADJUDGED that the determination is annulled, with costs, and petition granted.



Footnotes

Footnote 1: Because this was a document-based determination and no hearing was held, the proceeding was improperly transferred to this Court (see Matter of Iza Land Mgt. v Town of Clifton Park Zoning Bd. of Appeals , 262 AD2d 760, 760-761 [1999]). As is our practice, we will nevertheless address the merits of the proceeding in the interest of judicial economy (see id. ).

Footnote 2: 10 NYCRR 69-10.10 (e) (2) specifically requires an applicant to provide the following: "copies of all assessments made to determine the necessary AT, including an assessment of the enrollee's unique functional needs and the intended purpose and expected use of the requested AT. Any assessment submitted must include: (i) information about the individual's expressed needs and preferences, functional limitations and prognosis; (ii) information about the environment in and circumstances under which the AT will be used; (iii) the basis for selecting the particular AT being requested, including advantages over other options, how it addresses the enrollee's functional limitations, how it meets the enrollee's needs safely, maintenance expenses, and cost/benefits; (iv) a description of the alternatives to the particular AT that were considered, including a comparison of features, future expansion or adaptation capabilities, the safety of the enrollee, the overall cost, and the reliability, and if less than three options were considered, the reason for considering less than three must be provided; and (v) a written explanation of why the AT requested was chosen."

Footnote 3: We note that the evaluation includes a recommendation to include a ramp to the deck to assure that the child has safe ingress/egress from both the front and the back of the house.